UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>v.<br><br>DANIEL SILVA-SOSA,<br><br>          Defendant. | Case No.: 18-MJ-23270-KSC<br><br>**ORDER DENYING DEFENDANT'S MOTIONS TO: (1) DISMISS COMPLAINT; (2) SUPPRESS EVIDENCE; (3) REQUEST JURY TRIAL; (4) APPLY THE APPROPRIATE ELEMENTS FOR 8 U.S.C. § 1325(A)(2); AND GRANTING DEFENDANT'S MOTION FOR (5) LEAVE TO FILE FURTHER MOTIONS [ECF NO. 17]** |

## I. INTRODUCTION

**A.**   <u>**Procedural History**</u>

The defendant, Daniel Silva-Sosa, was arrested on December 19, 2018. The United States (hereinafter the "U.S.") filed its Complaint on December 20, 2018. The defendant's initial appearance and arraignment was held on December 20, 2018, at which time this Court set its conditions for release. The defendant filed his Motions to Dismiss the Complaint, Suppress Evidence, Request Jury Trial, Apply Appropriate Elements of 8 U.S.C. § 1325, and Grant Leave to File Further Motions, on February 6, 2019. The U.S. filed its response to defendant's Motions on February 26, 2019.

1

## II. DISCUSSION

A. **Motion to Dismiss**

Defendant moves to dismiss the Complaint on two grounds: (1) the prosecution violated his equal protection and due process rights; and (2) 8 U.S.C. § 1325 is unconstitutional.

**1. Equal Protection**

Defendant asserts that because his Class B misdemeanor is considered a "petty offense," he should be prosecuted through the Central Violations Bureau ("CVB"). (ECF No. 17 at 5). He argues that this would allow him to have his case dismissed outright or resolved through a fine or deferred prosecution. *Id*.

Defendant further claims the Federal government discriminates against 8 U.S.C. § 1325 defendants as compared to other individuals prosecuted for petty offenses in the Southern District of California, as he was treated more harshly than defendants charged with equivalent or more serious crimes. *Id*. at 5. Furthermore, the defendant contends he was discriminated against because of his alienage and national origin in violation of the Equal Protection Clause of the U.S. Constitution. *Id*. at 6. Defendant cites to *Graham v. Richardson*, 403 U.S. 365 (1971), in support of his contention that classifications based on alienage, national origin, and race are "inherently suspect and subject to close judicial scrutiny." *Id*. at 372.

In response, the U.S. asserts that 8 U.S.C. § 1325 does not distinguish based on national origin or race but, even if it did, the Court should still apply a "rational basis" review. (ECF No. 19 at 3). The U.S. relies on *Plyer v. Doe*, 457 U.S. 202 (1981), in which the Supreme Court held that "[u]ndocumented aliens cannot be treated as a suspect class." *Id*. at 223. Additionally, *Plyer* instructs "it is 'a routine and normally legitimate part' of the business of the Federal Government to classify on the basis of alien status." *Id*. at 224.

The U.S. also cites to a decision from this district, *United States v. Chavez-Diaz*, No. 18-mj-20098-KSC-AJB (S.D. Cal. Oct. 30, 2018). Therein, the defendant alleged that his prosecution violated equal protection and due process as he was prosecuted under

"Operation Streamline" in the District Court, rather than through CVB. Judge Battaglia rejected this argument. Recognizing the dramatic increase in case filings for individuals who illegally entered the United States in violation of 8 U.S.C. §1325, and the need to hold prompt initial appearances in accordance with Rule 5 of the Federal Rules of Civil Procedure, Judge Battaglia explained the steps taken by the judges of the Southern District of California to address the substantial increase in case filings. *Id.* at 2-5.

The Court then addressed the nature of the cases prosecuted in the CVB, noting that they primarily involved violations occurring on federal reservations initiated by citation, which primarily involve infractions, and the defendant's contention that he was treated differently from those defendants and, therefore, targeted because he was a suspect class as an "alien." *Id*. at 5-8. Judge Battaglia distinguished the nature of the criminal charges brought in CVB stating

> Due to the numbers, and the similarity of the charges, and misdemeanor proceedings under Rule 58, including a plea offer for time served if the plea is tendered early on, the misdemeanor §1325 cases are handled together. It makes simple organizational sense. The scheduling of these matters in one courtroom or the other is charge based, not nationality based. No separate "court" has been created or exists. Indeed, all §1325(a) misdemeanor defendants are treated equally, fully receiving all rights and protections they are guaranteed.

*Id*. at 6. Accordingly, the Court rejected this argument, noting that "[i]mmigration violations, like 8 U.S.C. §1325(a), are not subject to disposition as a CVB matter. They do not occur on federal reservations. Defendant's attempts to 'assimilate' illegal entry into the volume of military base trespass cases in unavailing." *Id*. at 8. In sum, "[i]n no way does alienage play a part from the Court's perspective of scheduling the various [8 U.S.C. §1325] matters [in this Court] brought by the Government." *Id*. at 9.

This Court holds that the prosecution of the defendant in District Court did not violate his equal protection rights. As with the defendant in *Chavez-Diaz, supra*, the calendaring of his case with others similarly charged was based on the charges, not the

alienage of the defendants. Rather, the Court has the authority to "administer its business with available resources," and processing cases by charge is not discriminatory. *Id*.

**2. Due Process**

Arguing that the U.S. violated his substantive and procedural due process rights, the defendant cites to *United States v. Salerno*, 481 U.S. 739 (1987), in support of his assertion that the right to substantive due process "prevents the government from engaging in conduct that shocks the conscience." *Id*. at 746; ECF No. 17 at 7. Defendant adds that even when the government survives substantive due process scrutiny, it must also survive procedural due process scrutiny as set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). (ECF No. 17 at 7). Therein, the Supreme Court identified the following factors for evaluating procedural due process claims: (1) the interest at stake for the individual; (2) the risk of erroneous deprivation of such interest and the probable value of safeguards; and (3) the costs and administrative burden on the Government. *Id*. at 335.

Defendant argues that the U.S. violated his substantive due process because it deprived him of the benefits of CVB court, while extending those benefits to individuals charged with similar or more serious petty offenses. (ECF No. 17 at 7). He adds that the Court should weigh the *Mathews v. Eldridge* three-factor test in his favor because the interests at stake are substantial, charging him in CVB court would alleviate the risk of erroneous deprivation, and that utilizing CVB court for § 1325 defendants would lessen the costs and burden on the Government. *Id*. at 7-8.

In response, the U.S. asserts that the defendant's rights were not violated because the day after his arrest he appeared for his initial appearance before a U.S. Magistrate Judge who appointed counsel and set bond. (ECF No. 19 at 7). The U.S. points out that defendant is represented by able counsel and is exercising his right to proceed to trial. *Id*. Further, the U.S. concludes that procedural due process was not violated because the U.S. Constitution does not mandate CVB for all misdemeanor prosecutions. *Id*.

For the reasons set forth above, this Court finds defendant's due process rights were not violated. There is a rational basis for the Court's procedures and there is nothing

shocking or outrageous about the way 8 U.S.C. §1325 cases are handled in this District. The defendant was advised of and invoked his Miranda rights, appeared promptly before a judge in accordance with Rule 5 of the Federal Rules of Criminal Procedure, was appointed counsel, and is proceeding to a speedy trial. The U.S. satisfied the requirement of providing the defendant with the rights afforded under the U.S. Constitution and the Federal Rules of Criminal Procedure. Aside from arguing that his case should be processed through CVB, defendant has not identified any other rights to which he is allegedly entitled that he has not received. Defendant's Motion to Dismiss on this ground is denied.

### 3. The Constitutionality of 8 U.S.C. § 1325

Defendant asserts that 8 U.S.C. § 1325 is unconstitutional because it favors unwed mothers over unwed fathers (ECF No. 17 at 8). Reliance is placed on *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017), a case that addressed the constitutionality of certain provisions of the Immigration and Nationality Act (INA). The Supreme Court held therein that statutes that transmit citizenship to children born abroad to unwed U.S. citizens differently based on the gender of the parent violate the equal protection and due process clauses of the Constitution. The Court's decision, however, did not address other provisions of the INA, such as 8 U.S.C. § 1325.

This precise issue was decided in this District in *U.S.A. v. Madero-Diaz*, 17cr1291-LAB (S.D. Cal., Oct. 2, 2017), in which District Judge Burns held a defendant lacked standing to challenge an 8 U.S.C. § 1325 conviction on the basis of *Morales-Santana* because he was not making a claim of derivative citizenship. The case is currently pending before the Ninth Circuit.

Here, similar to the facts presented in *Madero-Diaz*, the defendant lacks standing to challenge §1325 on the basis of *Morales-Santana* because he is not making a claim to derivative citizenship. Therefore, Defendant's Motion to Dismiss on this ground is denied.

//
//
//

B. **Motion to Suppress Evidence**

Defendant also moves to suppress evidence of the statements he made to a Border Patrol Agent ("BPA"), as well as any evidence not timely provided by the United States during discovery.

**1. Defendant's Statements are Admissible**

Defendant argues this Court should suppress all of his statements, whether made in the field or in response to booking questions. (ECF No. 17 at 8). He asserts his Fifth Amendment right against self-incrimination was violated, and cites to *Dickerson v. United States*, 530 U.S. 428 (2000), which held that a *Miranda* warning is necessary prior to "custodial interrogation." *Id*. at 444. Defendant contends the BPA should have issued the *Miranda* warning prior to taking him into custody. (ECF No. 17 at 9).

To support its assertion that the BPA's actions were correct and that the defendant's field statements are admissible, the United States relies on two Ninth Circuit cases. (ECF No. 19. at 9). In *United States v. Cervantes-Flores*, 421 F.3d 825 (9th Cir. 2005), the Court held that an "officer may question [individuals reasonably detained near the border] about their citizenship and immigration status." *Id*. at 830. Similarly, in *United States v. Galindo-Gallegos*, 244 F.3d 728 (9th Cir. 2001), the Court held that "brief questioning near the border is a non-custodial *Terry* stop that does not trigger *Miranda*." *Id*. at 732.

A defendant may waive his *Miranda* rights if the waiver is made "voluntarily, knowingly and intelligently." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). This inquiry has two distinct dimensions: "[f]irst, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id*. There is a presumption against waiver, which the government bears

the burden of overcoming by a preponderance of the evidence. *North Carolina v. Butler*, 441 U.S. 369, 375 (1979).

As applied to the facts of the present case, after the BPA found the defendant attempting to conceal himself, the defendant was asked about his citizenship and immigration status. Nothing about this interaction could be considered violent or coercive. As stated, the Ninth Circuit has held that an officer may question individuals reasonably detained near the border about their citizenship and immigration status. *Cervantes-Flores*, at pp. 829-30. Field questioning of a person near the border is a non-custodial *Terry* stop that does not trigger *Miranda*. *Galindo-Gallegos*, 244 F.3d at p. 728. Therefore, the defendant's statements are admissible.

**2. Suppression Request**

Defendant requests that this Court suppress evidence which was not timely provided in discovery. (ECF No. 17 at 10). Fed. R. Crim. P. 16 requires the government to provide relevant discovery to defense counsel when requested. Defendant requests production of all of his prior statements, including reports, records, audio and video recordings related to the arrest, his prior record, expert witnesses, names of witnesses favorable to him, National Guard information, as well as all material items under *Brady*, *Henthron*, *Giglio* and the Jencks Act. *Id*. at p. 11.

The U.S. asserts that it has and will continue to meet its obligations under Rule 16 of the Federal Rules of Criminal Procedure. (ECF No. 19 at 10). It represents that it has produced 22 pages of discovery and a video recording of defendant's post-arrest interview. The defendant contends that absent proper notice at least one week prior to trial, the U.S. should be precluded from introducing any Rule 404(b) evidence. (ECF No. 17 at 12). The U.S., however, does not at this time intend to introduce Rule 404(b) evidence at trial. (ECF No. 19 at 10).

Unless defendant can provide more specificity to support his assertion that the U.S. has failed to comply with its discovery obligations, this Court finds defendant's arguments

7

vague, unsupported, and unpersuasive. Accordingly, defendant's Motion on this basis is denied.

C. <u>**Motion for Jury Trial**</u>

Defendant argues he should be granted a jury trial because while his crime is considered a petty offense, the additional penalty of deportation raises the crime to a "serious" level. (ECF No. 17 at 12-13). Defendant concedes that 8 U.S.C. §1325(a)(2) is presumed to be a "petty" offense because the maximum prison term is six months. *Id.* at 13.

Ninth Circuit precedent, however, does not support this conclusion. The Circuit holds that consequences of an 8 U.S.C. §1325 conviction "do not convert the border-crossing misdemeanor into a 'serious offense' for which the Sixth Amendment requires a trial by jury." *United States v. Rodriguez-Rodriguez*, 742 F.2d 1194, 1195 (9th Cir. 1984). If deportation occurs, it is a collateral consequence of defendant's §1325 conviction. Therefore, defendant's Motion on this basis is denied, as he is not entitled to a trial by jury.

D. <u>**Motion to Apply the "Appropriate Elements" for 8 U.S.C. § 1325(a)(2)**</u>

Defendant asserts that the government must prove the following three elements beyond a reasonable doubt: (1) defendant is an alien; (2) defendant purposefully eluded examination; and, (3) defendant successfully eluded examination, meaning he crossed into the United States free from official restraint at a port of entry. (ECF No. 17 at 14-15). The specific language of 8 U.S.C. § 1325(a)(2) punishes "[a]ny alien who . . . eludes examination or inspection by immigration officers." There is no language in the statute requiring the United States to prove that the defendant successfully entered the United States free from restraint through a port of entry. Conversely, Ninth Circuit precedent holds that an alien violates 8 U.S.C. §1325 once he or she gains entry into the United States "through an unlawful point and does not submit to [the required] examinations." *United States v. Rincon-Jimenez*, 595 F.2d 1192, 1193, 1194 (9th Cir. 1979); *see also United States v. Choy-Timana*, 2018 WL 4092125, *3 (S.D. Cal., Aug. 28, 2018); *United States v.*

8

*Ramirez-Raudales*, 2019 WL 366287, *4; *Untied States v. Yanez-Chavez*, 2018 WL 6445169 ,*7 (S.D. Cal., Dec. 10, 2018)

The Court finds the defendant's argument on this basis both unsupported and unpersuasive. The U.S. must prove the two elements of 8 U.S.C.: §1325(2)(a) (1) referenced above, nothing more. Accordingly, the Motion on this basis is denied.

### E.  Motion for Leave to File Further Motions

The defendant asserts he may need to file further motions *in limine* or other motions as new information surfaces and requests the opportunity to file further motions. The U.S. does not object to the Motion as long as any and all future motions are based on newly discovered evidence. Since there are no objections, this motion on this basis is granted.

## III. CONCLUSION

For the reasons stated herein, defendant's Motions to Dismiss Complaint, Suppress Evidence, Request Jury Trial, and Apply the Appropriate Elements for 8 U.S.C. § 1325(a)(2) are DENIED. The defendant's Motion for Leave to File Further Motions is GRANTED.

Dated:  April 3, 2019

Hon. Karen S. Crawford
United States Magistrate Judge